IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PATRICIA BALL, Individually and as Administratrix of THE ESTATE OF FORMEKA BALL, DECEASED, and on behalf of all wrongful death beneficiaries of FORMEKA BALL, DECEASED — PLAINTIFF

V. — CAUSE NO: 3:24-CV-632-DPJ-ASH

RIVER OAKS HOSPITAL, LLC d/b/a MERIT HEALTH RIVER OAKS; JACKSON HB MEDICAL SERVICES, LLC JOHN DOES 2-10 — DEFENDANTS

DECLARATION OF CHRIS WATERER, M.D.

I, Chris Waterer, M.D., declare as follows:

1. I am over eighteen years of age, and am competent to make this Declaration.
2. I have reviewed documentation in the above matter and provided my opinion on the facts in the above styled case in my report attached hereto as Exhibit A, each of which I offer in terms of reasonable medical probabilities. This report is a true and correct representation of my opinions in this matter.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on 5th day of February, 2026 in Jackson, Mississippi.

C Waterer
Chris Waterer, M.D.

EXHIBIT
tabbies
B

BAPTIST. | HEART

**CARDIOLOGY:**

Stephen Anderson, MD
John Bellan, MD
Adam Berman, MD
Benjamin M. Chilcutt, MD
Cameron Guild, MD
Eric Holland, MD
William H. Jones, MD
Daniel H. Kelly, MD
S. Todd Lawson, MD
Brandon W. Lennep, MD
Shawn W. Sanders, MD
Keith D. Thorne, MD
P. Ross Thurmond, DO
James L. Warnock, MD
H. Chris Waterer, MD
Jeremy S White, MD

**SURGERY:**

Craig V. Adams, MD
William J. Harris, III, MD
David A. Johnson, MD
Joshua Plant, MD
Galen Ohnmacht, MD

November 19, 2025

Lisa McKay
Currie Johnson & Myers
1044 River Oaks Drive
Flowood, MS 39232

Re: Formeka Ball

Dear Mrs. McKay,

You asked me to look at this case from a cardiology perspective and provide my opinions. I am a physician board-certified in internal medicine and cardiovascular disease. I practice interventional and general cardiology at Cardiovascular Associates in Jackson, MS. My CV contains additional background information. I charge $500 per hour to review and discuss records and $1000 per hour for deposition and trial testimony. I have not authored any publication in the last 10 years. I have testified in the following cases in the last 4 years:

1. March 2021 – Carpenter, et al v. Kot, et al.; In the Circuit Court of Forrest County, Mississippi; Cause No. W-20-0040

2. October 2024 - Ladner, et al. v. Whitlock, et al.; In the Circuit Court of Jackson County, Mississippi; Cause No. 20-00151-CT

My opinions are based on my education, training and experience, as well as my review of the following records and other documentation:

Formeka Ball's Medical Records from Merit Health River Oaks Hospital

Formeka Ball's Medical Records from Florence Family Medical clinic



EXHIBIT
tabbies
A

BAPTIST. | HEART

Toxicology report of Formeka Ball

Death certificate of Formeka Ball

Depositions of Patricia Ball, Latisha Ball Simmons, Latasha Ball Owens, Danny Ball, Dr. Victoria Ross and Patrick Lewis, PA

911 call recording from Rankin County and written report

Pafford ambulance run report

It is my opinion that the care and treatment of Formeka Ball by Jackson HB's employees, Patrick Lewis, P.A. and Dr. Victoria Ross, and otherwise at Merit Health River Oaks Hospital, met the standard of care. Further, nothing PA Lewis, Dr. Ross or other care providers did or didn't do caused or contributed to Ms. Ball's death. I base my opinion on the following facts that I obtained from reviewing the medical records and deposition testimony, including, but not limited to:

The records reflect that Ms. Ball drove herself to the Merit Health River Oaks emergency room on October 2, 2023, arriving at 10:41 a.m. She was a 46-year-old black female, non-smoker, who complained of "sudden onset left-sided chest pain associated shortness of breath that started earlier this morning. States that she has a tightness sensation in the left respiratory chest that does radiate to her left upper flank. Patient states that the pain is persistent; shortness of breath is also persistent, not exacerbated by movement, activity or relieved with rest. She admits to associated tingling in her left hand. States recently was treated for sinusitis by her primary care. She admits to waking up in a cold sweat this morning, denies any nausea, vomiting, abdominal pain, urinary symptoms, headache, dizziness."

Her initial vital signs included heart rate of 62, blood pressure of 154/89, respiration rate of 20 and blood oxygen level (SpO2) of 100%. She reported pain of 5 out of 10.

Patrick Lewis, PA, ordered a CBC, CMP, high-sensitivity troponin, EKG and chest x-ray. An EKG was done within approximately 10 minutes of her arrival. It showed a T wave inversion of V2 but was essentially normal. The x-ray was normal. The high sensitivity troponin was 7.2 (well within the hospital lab's normal range of 0.0-53.7), and the CBC and CMP were essentially normal. Additionally, Dr. Victoria Ross reviewed the EKG and found "no STEMI" which she noted on the EKG strip. No second HS troponin was required by the standard of care because the symptoms had started sufficiently earlier in the day that the troponin, which measures death of the muscle due to myocardial infarction ("MI"), would have been elevated, if she was having an MI. In addition to Patrick Lewis' documentation and testimony, the testimony of the family members who spoke with her that morning confirmed that she was having symptoms as of the time of their early morning call, well before 7 a.m.

Patrick Lewis discussed the test results with Ms. Ball. She recalled that she "was in a car accident 2 days ago when her car struck a deer." Due to the negative work-up and this new information, Patrick Lewis diagnosed her with musculoskeletal pain, and she was given Toradol.

She was given discharge instructions that included coming back to the ER if any symptom worsened or she developed any new symptom. Discharge vitals were pulse 60, respiratory rate 18, blood pressure

BAPTIST. | HEART

141/87. Her pain was 0 out of 10. Ms. Ball was then discharged from the emergency room. Her family members have confirmed that Ms. Ball didn't complain of any severe pain or symptoms the rest of that day, and didn't do or say anything that made them think she needed to return to the emergency room.

Ms. Ball didn't return to the emergency room. According to her family members who saw her later that day and evening, she didn't have any specific or severe complaints or symptoms of any kind. Her daughter who lived with her spoke with her at approximately 9 p.m. and then found her the next morning in bed, facedown and not breathing, and called 911. According to the EMS report, she was found lying face down with her sheet covering her as if she was sleeping. She was pulseless and not in a shockable rhythm. According to the EMS report, she was pale and cool and rigor mortis had set in; EMS personnel estimated that she had been dead several hours.

It is my opinion that there was nothing in the results of the various tests performed on Ms. Ball that indicated further cardiology evaluation was necessary. The initial differential diagnosis correctly included STEMI, NSTEMI, pneumonia, costochondritis and angina. It is my opinion that Patrick Lewis, PA and Dr Victoria Ross met the standard of care in their evaluation and treatment of Formeka Ball and that nothing that they did, or failed to do, caused or contributed to Ms. Ball's death.

No autopsy was performed on Ms. Ball so her cause of death cannot be known with certainty. However, given the facts, including but not limited to the following, to a reasonable degree of medical probability she did not die from an MI: Ms. Ball drove herself to the emergency room; had pain of 5/10, and then 0/10; did not complain of worsening symptoms or go back to the emergency room; had a normal HS troponin and other bloodwork, as well as normal EKG; according to the paramedics was found in bed on her stomach with the sheet on her in normal sleeping position and with rigor mortis having already set in and an estimated time of death several hours before she was found.

I disagree with plaintiff's experts' contention that Ms. Ball was likely undergoing coronary thrombosis at the time of her admission and discharge from the Merit Health River Oaks emergency room, and that she died from complications of an acute myocardial infarction.

Based on a normal EKG and normal HS Troponin, based on her full clinical picture, the testimony of the family that Ms. Ball did not have complaints of pain such as to go back to the ER that night, and based on the condition in which she was found (still in bed as if she hadn't moved from sleeping), Ms. Ball was not undergoing coronary thrombosis at the time of her ER admission. Since there was no autopsy, there is no way to know her cause of death but causes of sudden death that are possible include arrythmia, aneurysm, stroke, and pulmonary embolism, all of which taken together as a group are more probable than an MI.

It is not likely that Ms. Ball would have pain of 5/10, then 0/10 at the ER, with a normal Troponin, EKG and other vitals, then die of a myocardial infarction in the middle of the night without ever trying to get out of bed, as was the way in which Ms. Ball was found the next morning. The fact that Ms. Ball was found in bed with the sheet covering her indicates she died in her sleep with no apparent recurrent symptoms.

I also disagree with plaintiff's experts' contention that it was a violation of the standard of care for the hospital to fail to have a protocol that required a doctor to evaluate Ms. Ball before discharge -- or for Dr. Ross to not evaluate Ms. Ball as a matter of course/routine. A physician's assistant (PA) is qualified to

BAPTIST. | HEART

evaluate, treat and discharge a patient such as Ms. Ball. Patrick Lewis met the standard of care in his evaluation and treatment of Ms. Ball, such that there would have been nothing additionally that should have been done by a physician, had one seen Ms. Ball. There was no violation of the standard of care by Dr. Ross, Jackson HB Medical Services, or otherwise simply because Dr. Ross didn't evaluate Ms. Ball, as that is not required by the standard of care.

Also, I disagree with plaintiff's expert that a cardiologist should have been called to evaluate Ms. Ball to treat her "acute coronary syndrome." There is no evidence to support Ms. Ball having acute coronary syndrome, and nothing in Ms. Ball's history and presentation, lab work and other tests, including the EKG, that would have required a cardiologist to be consulted.

In summary, it is my opinion her cause of death was not a myocardial infarction resulting from a thrombotic event; additional testing or referral was neither indicated or required, evaluation; treatment by a physician assistant such as Patrick Lewis was reasonable and within the standard of care; and there was no requirement for a more extensive evaluation by a doctor.

Sincerely yours,

Dr. Henry C. Waterer

501 MARSHALL STREET, SUITE 104 • 401 BAPTIST DRIVE, SUITE 201 • 151 EAST METRO PARKWAY, SUITE 202
JACKSON, MISSISSIPPI 39202 — MADISON, MS 39110 — FLOWOOD, MS 39232
Ph: 601-969-6404 — Fax: 601-973-4541 — Fax: 601-973-4542