UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PATRICIA BALL PLAINTIFF

V. CIVIL ACTION NO. 3:24-CV-632-DPJ-ASH

RIVER OAKS HOSPITAL, LLC, ET AL. DEFENDANTS

ORDER

This medical-malpractice, wrongful-death case is before the Court on a Motion to Exclude testimony on the lost value of household services [81] and a "Partial Motion for Summary Judgment: Household Services" [128], both initially filed by Defendant River Oaks Hospital, LLC. As explained, the Court denies both motions.

I. Background

The Court reviewed the facts of this case in a prior order. *See* Order [127]. Plaintiff Patricia Ball sued River Oaks Hospital and Jackson HB Medical Services, LLC after her adult daughter, the late Formeka Bell, passed away. Formeka died one day after she was treated by staff at the River Oaks emergency room. *See* 2d Am. Compl. [25] at 3–4. Patricia pursues the claims on behalf of Formeka's minor daughter, who Patrica adopted while Formeka was still living.

To prove the value of lost earnings and lost household services after Formeka's death, Patricia offers expert testimony from economist Bill M. Brister, Ph.D. *See* Brister Rep. [82-4] at 1. On February 5, 2026, River Oaks, joined by Jackson HB [83], moved to exclude Dr. Brister's testimony on the lost value of household services [81]. On July 17, 2026, River Oaks, again joined by Jackson HB [130], filed a motion for partial summary judgment [128] raising mostly the same arguments. That motion requests partial summary judgment on "Ball's claim for the

present value of household services." Def.'s Mem. [129] at 1. Ball responded in opposition to both motions.

After briefing was complete but before these motions were decided, Ball and River Oaks jointly moved to dismiss River Oaks with prejudice, which the Court granted. Order [141]. Jackson HB is the only remaining defendant and joined the relevant motions, so the Court will refer to the motions and arguments as those of Jackson HB.

II. Motion to Exclude

A. Standard of Review

"Although the substantive aspects of this case are governed by [Mississippi] law, the Federal Rules of Evidence control the admission of expert testimony." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002). Rule 702 addresses expert testimony and allows its admission if its proponent shows four elements by a preponderance of the evidence:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that district courts must act as gatekeepers under Rule 702 to ensure "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993). Defendant does not challenge relevance. As for reliability, the Court assesses the validity of the expert's reasoning and methodology. *See id.* at 593. "[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d

221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Thus, the Court must exclude any opinions based merely on subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 590.

Factors pertaining to reliability may include (1) whether a technique has been tested, (2) whether it's been subjected to peer review and publication, (3) its potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). But these factors "do *not* constitute a 'definitive checklist or test.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 593). Rather, courts "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

"The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (quotation omitted). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). And "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

All that said, the Court's gatekeeper function doesn't replace the traditional adversary system or the jury's role. *See Daubert*, 509 U.S. at 596. "Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* Thus, in determining the admissibility of expert testimony, the district court must accord the "proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo,* 826 F.2d at 422). Whether the expert's opinions are correct is not for the Court to decide. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

B. Analysis

Jackson HB makes two arguments. First, it says "application of judicial estoppel renders the proposed projection irrelevant." Def.'s Mem. [82] at 4. Second, Jackson HB contends that "Dr. Brister's projection is not a reliable calculation of the actual loss, if any, which Plaintiff's [adopted] daughter has sustained." *Id.* The Court will address these arguments in turn, though it finds neither persuasive.

1. Judicial Estoppel

Jackson HB says Dr. Brister's testimony on the value of lost services should be stricken because Patricia is judicially estopped from seeking those damages. *Id.* at 1–2. Though it frames this argument under Rule 702, the motion is one for partial summary judgment. Indeed, "the motion does not seek to exclude evidence so much as it seeks a dispositive ruling on damages." *Jackson-Hall v. Moss Point Sch. Dist.*, No. 3:11-CV-42-DPJ-FKB, 2012 WL 1098524, at *6 (S.D. Miss. Apr. 2, 2012).

"[A] motion in limine cannot be a substitute for a motion for summary judgment." *Smith v. Willow Wood Apartments TC, L.P.*, No. 3:19-CV-402-DPJ-FKB, 2021 WL 6127841, at *1 (S.D. Miss. Dec. 28, 2021) (citation omitted); *see Vann v. City of Meridian*, No. 3:21-CV-305-

DPJ-ASH, 2025 WL 269158, at *2 (S.D. Miss. Jan. 22, 2025) (same). Thus, the requested relief is unavailable through an in limine ruling, but the Court will consider it when addressing the partial summary-judgment motion.

2. Reliability

Jackson HB acknowledges Dr. Brister's qualifications, but it challenges the reliability of his opinions on the value of lost household services. Def.'s Mem. [82] at 6. It begins by disputing "the reliability of any methodology which relies on [the publication] *The Dollar Value of a Day*." *Id.* (citing *Paz*, 555 F.3d at 388 (holding that "any step that renders the analysis unreliable . . . renders the expert testimony inadmissible")).

Starting there, Jackson HB never explains why this publication is unreliable, and other courts in this district have admitted Dr. Brister's household-services opinions based on this source. *See Jackson v. Low Constr. Grp., LLC*, No. 2:19-CV-130-KS-MTP, 2021 WL 785329, at *7 (S.D. Miss. Mar. 1, 2021). In fact, the specific study Dr. Brister used "appears to be commonly relied upon by economists when calculating the economic value of lost household services." *Ashford v. Wal-Mart Stores, LP*, No. 1:11-CV-57-HSO-JMR, 2013 WL 152853, at *5 (S.D. Miss. Jan. 15, 2013) (citing Thomas R. Ireland, *Uses of the American Time Use Survey to Measure Household Services: What Works and Does Not Work*, 8 J. Legal Econ. 61 (Oct. 2011)).

Jackson HB's better-developed argument is that the assumptions from *The Dollar Value of a Day* "offend[ ]" Rule 702 when applied to this case. Def.'s Mem. [82] at 6. It offers three reasons why, all of which go to weight.

***Failure to consider mitigation.*** Jackson HB says Dr. Brister "fails to account for Plaintiff's legal obligation to provide for her adopted daughter and mitigate the economic loss." Def.'s Mem. [82] at 6. It also argues that because the child has been cared for by her aunt since

her mother's passing, "the child has not sustained any economic loss in relation to the household services which Formeka previously performed." *Id.* at 7.

"An injured party has a duty to take reasonable steps to mitigate damages." *Rolison v. Fryar*, 204 So. 3d 725, 736 (Miss. 2016) (citing *Nat'l Dairy Prods. Corp. v. Jumper*, 130 So. 2d 922, 923 (Miss. 1961)). Thus, "an injured party is not entitled to recover damages which he or she could have avoided through reasonable efforts." *Id.* (citing *Manhattan Nursing & Rehab. Ctr., LLC v. Pace*, 134 So. 3d 810, 818 (Miss. Ct. App. 2014)).

Whether Jackson HB may ultimately argue mitigation remains to be seen. First, it has not shown how *Patricia's* legal duty to provide for the child prevents the *child* from seeking damages for the lost service Formeka provided before she died. It is the child, not Patricia, who is the wrongful-death beneficiary. *See* Miss. Code Ann. § 11-7-13; *see also* Pl.'s Mem. [131] at 8 (noting that the "household-services claim" belongs to the minor, not "Ball personally").

Second, even if the aunt assumed the expense for the services Formeka provided before her death, Jackson HB has not shown why that would be a mitigation issue and not a collateral source. "[A] tortfeasor cannot use the moneys of others (insurance companies, gratuitous gifts, etc.) to reduce the cost of its own wrongdoing." *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611, 618 (Miss. 2001), *abrogated by Univ. of Miss. Med. Ctr. v. Lanier*, 97 So. 3d 1197 (Miss. 2012). Jackson HB may address these issues before trial; for now, the arguments are not persuasive.

In any event, to the extent that Jackson HB faults Dr. Brister for failing to consider certain details in his calculations, "courts have found no basis for exclusion when experts were challenged for failing to take into account certain data." *Fos v. Wal-Mart Stores E., LP*, No.

3:12-CV-735-LG-JCG, 2015 WL 11117924, at *2 (S.D. Miss. June 2, 2015) (citation omitted). The argument goes to weight.

***Household duration.*** Next, Jackson HB faults Dr. Brister for "inconsistency in the assumed duration of this particular household." Def.'s Mem. [82] at 7. In his report, Dr. Brister assumes that Formeka "would have lived in a 2-person household until her child reache[d] 21 years of age." Brister Rep. [82-4] at 2. But for lost household services, he estimates these losses through the remainder of Formeka's life expectancy. *Id.* at 5 (losses calculated for 36.4 years). Jackson HB sees an inconsistency that renders the opinions unreliable. Def.'s Mem. [82] at 7 (citing Brister Rep. [82-4] at 5).

Dr. Brister addresses this criticism in his affidavit. First, he notes that economists have different formulas for calculating lost wages and lost household services. Brister Aff. [97-2] ¶ 4. For lost household services, he assumed that some level of support would continue after the minor leaves home. *Id.* ¶ 9. That seems logical. *See Dallas v. Premier Vehicle Transp., Inc.*, No. 1:16-CV-358-LG-RHW, 2017 WL 3623750, at *3 (S.D. Miss. Aug. 23, 2017) (noting "the fact that [decedent] was single and did not reside with other members of his family does not foreclose the possibility that he did or would have provided household services or entitlement benefits to them"). But because services would diminish after the child leaves, Dr. Brister applied higher personal-consumption percentages after that point. Brister Aff. [97-2] ¶¶ 10–11. He based that methodology, and those percentages, on data found in *The Dollar Value of a Day*. *Id.* ¶ 11.

Jackson HB has not shown that this source or Dr. Brister's reliance on it is unreliable. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo*, 826 F.2d at 422. The dispute should therefore be addressed through

"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[,] . . . the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

***Other services considered.*** Jackson HB says Dr. Brister's projections are flawed because he considered "services (or categories of services) which did not directly benefit the child." Def.'s Mem. [82] at 7. But Dr. Brister states that he deducted "that portion of household services that is for the sole benefit of the decedent." Brister Rep. [82-4] at 2. To the extent that Jackson HB wishes to contest any specific calculations or the basis of his assumptions, it goes to weight, not admissibility. *See Viterbo*, 826 F.2d at 422.

***Household size.*** Jackson HB finally faults Dr. Brister for relying on source material that "appears to assume a three (3) to four (4) person household—not the two (2) person household that Formeka maintained." Def.'s Mem. [82] at 8 (unaltered). Dr. Brister attested that "*The Dollar Value of a Day* does not categorize household production data by total household size. Instead, it categorizes data by demographic characteristics, including the age of the youngest child." Brister Aff. [97-2] ¶ 19. He also noted that available data does not allow the analysis Jackson HB says he should have considered. *Id.* ¶ 20.

Here again, Jackson HB has not shown that *The Dollar Value of a Day* is an unreliable source. And Dr. Brister testified that economists "frequently rel[y]" on such "nationally derived averages" when calculating damages. *Id.* ¶ 22. The Court finds that this methodology is sufficiently reliable to be admissible. *See Kumho Tire*, 526 U.S. at 152 (directing trial courts to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); *see also Ashford*, 2013 WL 152853, at *5 (rejecting

reliability argument when defendant faulted expert for using "estimates from tables contained in *The Dollar Value of a Day*" instead of plaintiff's specific household information).

For these reasons, the Court denies the motion to exclude. The Court now turns to Jackson HB's motion for partial summary judgment.

## III. Motion for Partial Summary Judgment

### A. Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[] and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). It must "interpret all facts and draw all reasonable inferences in favor of the

nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014). But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little*, 37 F.3d at 1075.

The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports their claim. *See Forsyth v. Barr*, 19 F.3d 1527, 1536–37 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). Disputed fact issues that are "irrelevant or unnecessary" to deciding the motion will not be considered by the Court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B. Analysis

Jackson HB says damages for lost household services should be precluded based on judicial estoppel and lack of evidence.[1]

1. Judicial Estoppel

According to Jackson HB, Patrica Ball "should be estopped from recovering the alleged value of [] household services" because she legally adopted Formeka's daughter, now the heir, in 2014—more than ten years before Formeka's death. Def.'s Mem. [129] at 6. The parties agree

[1] This motion is untimely, but Plaintiff waived the procedural defect by failing to object.

that Patricia adopted her granddaughter in 2014 but that the child continued to reside with Formeka until her death. Both Patricia and Formeka provided household services to the minor. As explained, the facts do not support the extraordinary remedy Jackson HB seeks.

As a threshold matter, the Fifth Circuit "generally . . . considers judicial estoppel 'a matter of federal procedure' and therefore applies federal law." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003) (quoting *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 600 (5th Cir. 1996)). The doctrine "is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position,' particularly in situations where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Wells Fargo Bank, N.A., v. Oparaji (In re Oparaji)*, No. 11–20871, 2012 WL 4748957, at *3 (5th Cir. Oct. 5, 2012) (first quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988); and then quoting *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008)).

Judicial estoppel is an equitable doctrine, "'invoked by a court at its discretion' to 'protect the integrity of the judicial process.'" *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). It is an "extraordinary remedy that should be used only when a party's inconsistent behavior will result in a miscarriage of justice." *Matheson Tri-Gas, Inc. v. E-B Display Co.*, No. 3:20-CV-0296, 2021 WL 1701062, at *2 (S.D. Tex. Apr. 29, 2021) (citing *New Hampshire*, 532 U.S. at 749–50); *see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996).

To determine whether judicial estoppel applies, courts consider three elements: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not

act inadvertently." *Reed*, 650 F.3d at 574. That said, these factors are not "inflexible prerequisites or an exhaustive formula" and "different considerations 'may inform the doctrine's application in specific factual contexts.'" *Anderson v. Entergy Operations, Inc.*, No. 5:11-CV-103-DPJ-FKB, 2012 WL 5400059, at *2 (S.D. Miss. Nov. 5, 2012) (quoting *Reed*, 650 F.3d at 574).

For starters, Jackson HB argues that "*Plaintiff* should not be allowed to seek the recovery of economic damages for the value of domestic services which Plaintiff was (and remains) legally obligated to provide." Def.'s Reply [102] at 5 (emphasis added). But that's not what Plaintiff seeks. As noted before, Patricia (the Plaintiff) seeks damages on the minor's behalf. It is the minor, not her legal parent, who is the wrongful-death beneficiary. *See* Miss. Code Ann. § 11-7-13. Thus, if the Court granted Jackson HB's request, it would bar the minor—not Patricia—from receiving these damages though it is Patricia who allegedly took inconsistent positions. Such a result is not necessary to "protect[] the integrity of the judicial process." *United States ex rel. Long v. GSDMIdea City, LLC*, 798 F.3d 265, 271 (5th Cir. 2015) (quoting *New Hampshire*, 532 U.S. at 749–50).

Also, the positions are not "plainly inconsistent." *Reed*, 650 F.3d at 574. The adoption decree, signed in December 2014, states that the minor had been in the "care, custody and control" of her grandparents since June 2014. Adoption Decree [82-2] at 1. It further states that Patricia and her late husband were given "all of the rights, benefits and responsibilities which arise from a natural parent-and-child relationship." *Id.* at 3. Jackson HB says that's inconsistent with Patricia's deposition testimony that the minor "lived with Formeka continuously until Formeka passed." Ball Dep. [82-3] at 36:3–9. Patricia did, however, share in the minor's care after school. Pl.'s Mem. [131] at 8 (citing Ball Dep.); *see also* Ball Dep. [137-1] 21:24–22:8.

Significantly, Patricia is neither challenging the "validity of the adoption decree [n]or contend[ing] that [she] was not [the minor's] legal parent afterward." Pl.'s Resp. [131] at 6. Rather, Patricia seeks to prove only that after the adoption, "Formeka resumed providing substantial day-to-day care, supervision, transportation, guidance, and other household services." *Id.* In her words, "[l]egal custody and the day-to-day provision of household services are not mutually exclusive." *Id.*

The Court agrees. The fact that the minor lived with her biological mother after the adoption and received compensable household services from her is not "plainly inconsistent" with Patricia's efforts to obtain custody. *Reed*, 650 F.3d at 574. Indeed, proving such damages "does not depend on Formeka having retained legal parental rights; it depends on proof that [she] actually performed valuable household services before her death." Pl.'s Resp. [131] at 6; *see* Miss. Code Ann. § 11-7-13; *Puckett Mach. Co. v. Edwards*, 641 So. 2d 29, 36 (Miss. 1994) (plaintiff bears the burden of proving damages). The adoption goes to "weight" or "the amount of damages," Pl.'s Mem. [131] at 7, it does not bar such recovery altogether.[2]

Ultimately, judicial estoppel is an equitable doctrine. *See Reed*, 650 F.3d at 574. And upon reviewing the record, it does not appear that Patricia made representations "as a means of obtaining unfair advantage." *In Re Oparaji*, 2012 WL 4748957, at *3. Defendant's motion is denied on this ground.

---

[2] Mississippi law does not treat legal parentage as dispositive in wrongful-death damages actions. Rather, the Mississippi Supreme Court has long recognized the right of an adopted child to inherit from their biological parents. *See e.g.*, *Est. of Jones v. Howell*, 687 So. 2d 1171, 1178 (Miss. 1996) (noting that "child given up for adoption could bring a wrongful death action for the death of a natural parent"); *Warren v. Foster*, 450 So. 2d 786, 788 (Miss. 1984) ("Mississippi's adoption law does not state in any shape, form or fashion that the right of the child to inherit from its natural parents is terminated. We think the intent of the legislature is clear; they intended for the child to continue to inherit from his or her natural parents." (footnote omitted)).

2. No Objectively Verifiable Evidence

Next, Jackson HB says partial summary judgement is appropriate because "[t]here is no objectively verifiable evidence of expenses incurred for custodial care and/or substitute domestic services for the child." Def.'s Mem. [129] at 5.

Patricia must prove her damages under Mississippi law. *See Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 311 (5th Cir. 1998) ("Substantive law includes not only the factual elements which must be found to impose liability and fix damages, but also the burdens of going forward with evidence and of persuasion thereon."). In the medical-malpractice context, Mississippi law defines economic damages as:

> objectively verifiable pecuniary damages arising from medical expenses and medical care, rehabilitation services, custodial care, disabilities, loss of earnings and earning capacity, loss of income, burial costs, loss of use of property, costs of repair or replacement of property, costs of obtaining substitute domestic services, loss of employment, loss of business or employment opportunities, and other objectively verifiable monetary losses.

Miss. Code Ann. § 11-1-60(1)(b); *see Clemons v. United States*, No. 4:10-CV-209-CWR-FKB, 2012 WL 5364737, at *5–6 (S.D. Miss. Oct. 30, 2012) (applying section § 11-1-60(1)(b)).

Jackson HB makes two arguments the Court will address. First, it seems to argue that Patricia has failed to show lost household-services damages because she herself held "all of the rights, benefits, and responsibilities which arise from a natural parent-and-child relationship." Reply [133] at 3 (quoting Adoption Decree [81-2] at 3); Def.'s Mem. [129] at 5. True, but as explained, Patricia is not seeking damages for herself; she represents the minor, and the adoption does not prevent the minor from seeking recovery. *See, e.g.*, *Est. of Jones*, 687 So. 2d at 1178 (permitting adopted child to bring wrongful death action for death of biological parent). The minor is entitled to seek household services. *See* Miss. Code Ann. § 11-7-13.

Next, Jackson HB says "there are no objectively verifiable amounts that have been incurred for custodial care or substitute domestic services due to Formeka's death." Def.'s Mem. [129] at 5–6. Thus, according to Defendant, Patricia fails to produce "*any* evidence" of those damages. *Id.* at 5 (emphasis added). That's not entirely true. While Patricia may not offer receipts, she does provide deposition testimony about the minor's living situation before and after Formeka's death coupled with Dr. Brister's expert opinions establishing the value of those lost services. *See* Ball Dep. [82-3]; Brister Rep. [82-4].

As to Brister, Jackson HB again challenges his report, this time saying his damages opinions are like the expert testimony rejected in *Rebelwood Apartments RP, LP v. English*, 48 So. 3d 483, 496 (Miss. 2010). According to Jackson HB, the Mississippi Supreme Court recognized in *Rebelwood* "that Mississippi law limits compensatory economic damages to the replacement of *actual* economic losses." Reply [133] at 5 (emphasis added). That's somewhat true but distinguishable. In *Rebelwood*, the plaintiff's expert was allowed to base future lost wages on an earning-capacity approach and national-average incomes rather than the decedent's actual income. 48 So. 3d at 494. The Mississippi Supreme Court reversed, holding that the damages are limited to actual income. *Id.* at 497. But it also acknowledged that "[a]bsolute certainty is by the very nature of the effort impossible." *Id.* (quoting *Culver v. Slater Boat Co.*, 722 F.2d 114, 123 (5th Cir. 1983)). Indeed, "[c]ourts are not prophets and juries are not seers" and in making such awards "fact-finders must attempt, in some degree, to gauge future events." *Id.* (quoting *Culver*, 722 F.2d at 123).

Put simply, lost wages are different from lost services. Actual income is easily proven through tax records, bank statements, and other objective evidence. Household services are not

documented like that, and Jackson HB has not cited a case disallowing these damages because the wrongful death beneficiary didn't keep such records.

More generally, "[w]hen loss is realized, but the extent of the injury and the amount of damage are not capable of exact and accurate proof, damages may be awarded if the evidence lays a foundation which will enable the trier of fact to make a fair and reasonable estimate." *McNerney v. United States*, No. 3:22-CV-684-CWR-LGI, 2025 WL 969246, at *3 (S.D. Miss. Mar. 30, 2025) (quoting *Warren v. Derivaux*, 996 So. 2d 729, 737 (Miss. 2008)). Patricia's evidence, including Dr. Brister's testimony, creates a jury question over the "objectively verifiable monetary loss." Miss. Code Ann. § 11-1-60(1)(b).

Thus, for the reasons explained, the Court denies summary judgment on this issue.

IV. Conclusion

The Court has considered all arguments. Those not discussed would not have altered the outcome. For the reasons explained, the Court denies Defendant's motion to exclude [81] and motion for partial summary judgment [128].

**SO ORDERED AND ADJUDGED** this the 11th day of September, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE